FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 23 2014 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KAMNAUT KAMNAUT,

                             Plaintiff,

     -against-

DELTA AIR LINES, INC,
                             Defendant.
------------------------------------------------------------x

## MEMORANDUM AND ORDER

12-cv-4873 (SLT) (JO)

**TOWNES, United States District Judge,**

     Kamnaut Kamnaut ("Plaintiff") brings this state law slip-and-fall action against defendant Delta Air Lines, Inc. ("Delta"). Plaintiff's claims arise out of injuries he sustained on December 15, 2010 when he slipped on an allegedly icy, slippery surface in the Delta Connection Carrier Area near Gate 25L in Terminal 2 of Kennedy International Airport while refueling an airplane. Currently before the Court is Delta's motion for summary judgment, which asserts that Delta cannot be held liable for Plaintiff's injuries because (1) the icy, slippery condition was open and obvious, (2) the condition of the tarmac was not inherently dangerous, (3) Delta used reasonable care to make the property safe, and (4) Plaintiff, not Delta, caused Plaintiff's injuries because Plaintiff chose to work on the surface rather than report the unsafe condition to Delta. For the following reasons, Delta's motion is denied.

### *Legal Standard*

     Summary judgment is only appropriate where, considering "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P.

56(a). In determining whether there is a genuine issue of material fact, a court resolves all ambiguities and draws all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With this standard in mind, the pertinent facts, undisputed, or where disputed considered in Plaintiff's favor, are as follows:

### *Factual Background*

Plaintiff has been employed by Allied Aviation as an airplane fueler, which entails driving fuel trucks and hooking up and disconnecting fuel hoses, since 1997 or 1998. (Def.'s 56.1 Stmt. ¶¶ 18-20.) On December 15, 2010, at 4:30 p.m., Plaintiff was injured when he slipped and fell on the tarmac while refueling an airplane at the Delta Connection Carrier Area near Gate 25L in Terminal 2 of Kennedy International Airport. (Def.'s 56.1 Stmt. ¶ 2.) At the time, the Delta Connection Carrier Area was leased and operated by Delta. (Barile Aff. ¶ 5.)

Plaintiff contends that he slipped and fell because the tarmac was covered by a combination of de-icing fluid, which has the consistency of oil, and ice. (Pl.'s 56.1 Stmt. pg. 12, ¶ 4; Raghubar Dep. 19:10-15.) He admits that he was aware of the slippery conditions, but contends that he "worked on and about this condition because he was required and forced to do so to perform his job duties." (Pl.'s 56.1 Stmt. ¶ 57; Pl.'s Dep. 43:15-44:15.) Plaintiff testified that he told his supervisor, Leon Farmer, that his work area was slippery and covered in ice, and that Farmer told Plaintiff that he would pass on this information to Delta. (Pl.'s 56.1 Stmt. ¶ 45; Pl.'s Dep. 47:11-48:10.) One of Plaintiff's coworkers, Mukesh Raghubar, who was assigned to work in the same area as Plaintiff on December 15, 2010, also testified that he mentioned the slippery tarmac condition to Farmer. (Raghubar Dep. 25:9-15.)

Raghubar, who witnessed Plaintiff's fall, testified that as Plaintiff slipped, his foot went up, and then he fell to the ground, hitting his buttocks and then head on the tarmac. (Pl.'s 56.1

Stmt. pg. 12, ¶ 3; Raghubar Dep. 31:22-25.) Immediately after the accident, Raghubar observed a "shiny layer of ice and de-icing fluid" on the tarmac, which he described as "extremely slippery." (Pl.'s 56.1 Stmt. pg. 12, ¶¶ 3-4; Raghubar Dep. 32:2-6, 39:16-22.) After Plaintiff's fall, he saw Delta personnel sprinkle salt on the area where Plaintiff had fallen. (Raghubar Dep. 47:12-19.)

Delta contends that it had twenty-five workers and a supervisor posted to the Delta Connection Carrier Area on every shift, and that Allied Aviation – Plaintiff's employer – had another four workers and a supervisor in the area. (Def.'s 56.1 Stmt. ¶¶ 14-15.) It contends that safety protocols maintained by both Allied Aviation and Delta prohibit fuel truck drivers from working on unsafe conditions and require workers to report unsafe conditions. (Def.'s 56.1 Stmt. ¶¶ 21, 32-34.) Delta contends that on the day in question, no complaint about the condition of the tarmac was made to Delta.

Plaintiff disputes whether fuel truck drivers were trained to actually follow these protocols. (Pl.'s 56.1 Stmt. ¶¶ 21, 68; Pl's Dep. 49:16-23.) He testified that he was not allowed to work "[o]nly if there was like [sic] heavy, heavy snow," and otherwise, the refuelers were expected to work on icy conditions. (Pl.'s Dep. 49:16-50:3.) Raghubar testified that refuelers are under time constraints to get their work done because of the nature of refueling airplanes with strict departure times. (Pl.'s 56.1 Stmt. pg. 12, ¶ 5; Raghubar Dep. 23:5-8, 44:14-45:20.) He also testified that in his opinion, "as an aviation fueler for ... 19 years, ... Allied Aviation [should not] be sending fuelers to work in areas where planes have been de-iced" before the areas are cleaned, because de-icing fluid is "extremely slippery." (Raghubar Dep. 21:14-22:3.)

Plaintiff, a citizen of New York, initially commenced this action by Summons and Verified Complaint dated November 14, 2011, in New York Supreme Court, Kings County,

against the Port Authority of New York and New Jersey ("Port Authority") and Delta. October 10, 2012, after Justice David B. Vaughan of the Kings County Supreme Court granted the Port Authority's motion to dismiss all claims against the Port Authority, Delta, the only remaining defendant – a corporation duly organized under the laws of Delaware with its principal place of business in the state of Georgia – removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1332.

## DISCUSSION

### 1. Was the icy, slippery condition open and obvious?

It is Delta's position that it is entitled to summary judgment because the slippery condition on the tarmac at Gate 25L was open and obvious. Under New York law, "landowners owe people on their property a duty of reasonable care under the circumstances to maintain their property in a safe condition." *Tagle v. Jakob*, 97 N.Y.2d 165, 168, 763 N.E.2d 107, 108-09 (2001). "Ordinarily, a landowner's duty to warn of a latent, dangerous condition on his property is a natural counterpart to his duty to maintain his property in a reasonably safe condition." *Galindo v. Town of Clarkstown*, 2 N.Y.3d 633, 636, 814 N.E.2d 419, 421-22 (2004). The New York Court of Appeals has held that "a landowner has no duty to warn of an open and obvious danger." *Tagle*, 97 N.Y.2d at 169. "The open and obvious doctrine is [grounded in] the idea that a party may only be partially or not at all liable for an injury relating to a defect where the defect was so 'open and obvious' that it is unreasonable for the injured party not to have taken note of it and taken action to avoid the defect and thus the injury." *Habecker v. KFC U.S. Properties, Inc.*, 928 F. Supp. 2d 648, 655-56 (E.D.N.Y. 2013).

However, "[e]ven if ... the claimed hazard ... was open and obvious as a matter of law, [the defendant] would still [not be entitled to] summary judgment [in a case where the] plaintiff is not claiming a violation of the duty to warn, but a violation of the broader duty to maintain the

4

premises in a reasonably safe condition." *Westbrook v. WR Activities-Cabrera Markets*, 5 A.D.3d 69, 71-72, 773 N.Y.S.2d 38, 41-42 (1st Dept. 2004). Thus, "[e]vidence that the dangerous condition was open and obvious cannot relieve the landowner of" its duty to "exercise[] reasonable care under the circumstances to remedy the condition and to make the property safe." *Cupo v. Karfunkel*, 1 A.D.3d 48, 52, 767 N.Y.S.2d 40, 43 (2d. Dept. 2003). Indeed, the New York Supreme Court, Appellate Division, Second Department has cautioned that "decisions which stand for the broad proposition that liability under a theory of common-law negligence will not attach when the allegedly dangerous condition is open and obvious should no longer be followed." *Id*. Rather, "proof that a dangerous condition is open and obvious does not preclude a finding of liability against a landowner for the failure to maintain the property in a safe condition but is relevant to the issue of the plaintiff's comparative negligence." *Id*.

Here, Plaintiff does not bring a claim for failure to warn. Rather, he contends that Delta failed to maintain the area around Gate 25L in a reasonably safe condition. Therefore, even if the icy, slippery condition were, as Delta contends, "open and obvious," this fact would not relieve Delta of liability. Rather, the "open and obvious" nature of the hazard would go to Plaintiff's comparative negligence.

### 2. *Was the Condition of the Tarmac Inherently Dangerous?*

Delta also contends that it is entitled to summary judgment because the condition on the tarmac was not inherently dangerous. In *Cupo*, the Court explained that:

> [i]n holding that the open and obvious nature of a condition is relevant to the issue of the plaintiff's comparative negligence, we emphasize that this will be an issue only in cases where it can reasonably be argued that a dangerous condition existed on the property which the landowner was under a duty to remedy. We do not suggest that a court is precluded from granting summary judgment to a landowner on the ground that the condition complained of by the plaintiff was both open and obvious *and, as a matter of law, was not inherently dangerous*.

5

*Id.* at 52 (emphasis in original). The Court explained that "[i]n such circumstances, the condition which caused the accident cannot fairly be attributed to any negligent maintenance of the property." *Id.* Delta seizes on this language, and asserts that it is entitled to summary judgment because, in addition to being open and obvious, the icy condition "was not in any manner inherently dangerous since it could have been remedied or an alternative position for [Plaintiff's] work could have been made available had he told Delta of the icy, slippery condition." (Def.'s Br. at 4-5.) However, Delta provides no citation in support of its curious proposition that the tarmac condition could not have been inherently dangerous, as a matter of law, merely because it was capable of being remedied. Rather, New York law provides that where "a dangerous condition exists on the property," it is the landowner's duty to "exercise[] reasonable care under the circumstances to remedy the condition and to make the property safe." *Id.* at 51.

Contrary to Delta's assertion, under New York law, "[w]hether a dangerous or defective condition exists on the property so as to give rise to liability depends on the circumstances of each case and is generally a question of fact for the jury." *Zhuo Zheng Chen v. City of New York*, 106 A.D.3d 1081, 1081, 966 N.Y.S.2d 177, 178 (2nd Dept. 2013). The parties do not dispute that the surface of the tarmac was covered in a combination of de-icing fluid and ice, and that both de-icing fluid and ice are slippery, potentially dangerous, substances. Indeed, after Plaintiff's accident, Delta spread salt on the area to reduce the slipperiness of the tarmac. Whether the condition of the tarmac was so dangerous that it gave rise to liability is a question of fact for the jury to resolve. *See Rector v. City of New York*, 259 A.D.2d 319-20, 321, 686 N.Y.S.2d 426, 427 (1st Dept. 1999) (finding summary judgment inappropriate where "a jury could readily conclude that ... [the] surface [wa]s considerably more slick, difficult to discern

and inherently dangerous than the natural state of the fallen snow" and thus, "represented a greater hazard than that originally posed by the natural condition of the sidewalk.").

### 3. *Did Delta use reasonable care to make the property safe?*

Delta contends that it cannot be held liable because it exercised reasonable care in maintaining the area around Gate 25L. Under New York law, "[w]here a plaintiff has presented evidence that a dangerous condition exists on the property, the burden shifts to the landowner to demonstrate that he or she exercised reasonable care under the circumstances to remedy the condition and to make the property safe." *Cupo*, 1 A.D.3d at 51; *Galindo*, 2 N.Y.3d at 636 ("It is well settled that a landowner has a duty to exercise reasonable care in maintaining his own property in a reasonably safe condition under the circumstances."). "The nature and scope of [the landowner's] duty and the persons to whom it is owed require consideration of the likelihood of injury to another from a dangerous condition on the property, the seriousness of the potential injury, the burden of avoiding the risk and the foreseeability of a potential plaintiff's presence on the property." *Galindo*, 2 N.Y.3d at 636; *see also Powers v. 31 E 31 LLC*, No. 153, 2014 N.Y. Slip Op. 07084, --- N.E.3d ----, 2014 WL 5325471 (N.Y. Oct. 21, 2014) ("The existence and scope of [a landowner's] duty is, in the first instance, a legal question for the courts to determine by analyzing the relationship of the parties, whether the plaintiff was within the zone of foreseeable harm, and whether the accident was within the reasonably foreseeable risks.")

Delta does not dispute that it owed Plaintiff a duty to maintain the property in a reasonably safe condition, but asserts that it met its duty because it posted numerous employees to the area and implemented a safety protocol requiring any and all of its workers to report unsafe conditions to Delta. Delta contends that "[t]he comprehensiveness of the safety protocols should not be questioned merely because plaintiff and others circumvented them." (Br. at 10).

7

Plaintiff disagrees, and contends that Delta's written protocol was not sufficient to satisfy its burden of maintaining the area in a reasonably safe condition. First, Plaintiff asserts that, regardless of whether Delta technically implemented a comprehensive written protocol for maintaining safe working conditions on the tarmac at Gate 25L, the workers who prepared airplanes for take-off were never trained to follow those protocols. Second, Plaintiff and his colleague testified that because of the time constraints plane refuelers worked under, particularly strict departure times, the protocols were unrealistic and could not be enforced, and the refuelers were required to hurriedly refuel the airplanes even if the tarmac was icy. Moreover, Plaintiff argues that Delta's protocols were clearly insufficient, given that Plaintiff was injured although he and Raghubar *did* notify their supervisor that the area they were working in was slippery. Finally, it is clear that Delta could have done more to lessen the risk of injury – immediately after Plaintiff's accident, Delta employees salted the tarmac. This evidence sufficiently calls into question whether Delta met its duty to keep the area near Gate 25L in reasonably safe condition. Accordingly, because whether Delta met its duty is a question best resolved by a fact-finder, summary judgment on these grounds is denied.

### 4. *Did Plaintiff, not Delta, cause Plaintiff's injuries?*

Finally, Delta contends that it is entitled to summary judgment because Plaintiff caused his own injuries by (1) choosing to work on the slippery tarmac, rather than reporting the unsafe condition to Delta and (2) choosing to stand with "his feet 'together' on the ice in one spot, not apart so he would have some balance and be able to brace himself." (Def.'s Br. at 12-15.)

In 1975, New York abandoned contributory negligence and assumption of risk as absolute defenses in favor of a form of comparative negligence. *Custodi v. Town of Amherst*, 20 N.Y.3d 83, 87, 980 N.E.2d 933, 935 (2012). CPLR 1411 provides that:

> In any action to recover damages for personal injury ... the culpable conduct attributable to the claimant ..., including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages.

CPLR 1411; *Soto v. New York City Transit Auth.*, 6 N.Y.3d 487, 494, 846 N.E.2d 1211, 1216 (2006) (Smith, J, dissenting) ("Since the enactment of CPLR 1411 in 1975, it has been the general rule that plaintiff's own culpability will not bar his claim, but will only be grounds for apportioning fault. In several cases, however, we have recognized that a plaintiff's fault may be so egregious in comparison to the defendant's that it supersede[s] defendants' conduct and becomes the 'sole legal cause' or 'sole proximate cause' of the plaintiff's injuries.") (quotation marks and citations omitted).

Having reviewed the evidence submitted by the parties, for the aforementioned reasons, this Court concludes that a reasonable juror could find that Plaintiff's conduct was not the sole cause of his injuries. Accordingly, under New York law, even assuming that Plaintiff was partially at fault for his injuries, the amount of his comparative fault is relevant to the amount of damages recoverable but does not bar recovery. Accordingly, Delta's motion for summary judgment on the grounds that Plaintiff is comparatively at fault for his injuries is denied.

## CONCLUSION

Delta's motion for summary judgment is denied in its entirety.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Brooklyn, New York
Dated: December 22, 2014

9